IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                      CR 15-4121 KG

SERGIO REYES-ALVARES,

       Defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW
AND ORDER DENYING MOTION TO DISMISS INDICTMENT

This matter is before the Court on Defendant Sergio Reyes-Alvares's Motion to Dismiss the Indictment, filed on December 10, 2015.  (Doc. 18).  The United States filed a response on January 8, 2016, (Doc. 23), and Reyes-Alvares filed a reply on January 15, 2016 (Doc. 31).  The United States charged Reyes-Alvares with illegal reentry under 8 U.S.C. §§ 1326(a) and (b). (Doc. 11).

In his Motion to Dismiss Indictment, Reyes-Alvares seeks dismissal of his illegal reentry charge by challenging the validity of his prior removal order.  Fed. R. Crim. P. 12(b)(3)(B)(v); 8 U.S.C. § 1326(d).  Reyes-Alvares contends in his brief that he was eligible for cancellation of removal, a voluntary departure, or a waiver of admissibility/adjustment of status, but for defects in his removal proceedings—in particular, the Immigration Judge ("IJ") and his lawyers stating that he was not eligible for forms of relief from deportation.  The Court held an evidentiary hearing on the motion on January 21, 2016.  (Doc. 32).  Having considered the briefing, the parties' arguments, exhibits, and the relevant law, the Court makes the following Findings of Fact and Conclusions of Law and will deny the motion.

**FINDINGS OF FACT**

1. Reyes-Alvares is a citizen of Mexico who entered the United States without inspection in 1995.*[1]

2. On September 1, 2004, Reyes-Alvares was granted status as a lawful permanent resident.*

3. On April 6, 2012, Reyes-Alvares pled no contest to one count of lewd or lascivious acts involving a child of 14 or 15 years in violation of Cal. Pen. Code § 288(c)(1) occurring on or about and between June 1st and July 31st, 2011.*[2]  Reyes-Alvares stipulated to the police report as the basis for his plea.  (ROA) at 265-66.

4. The police report stated that in June or July 2011, Reyes-Alvares gave a fifteen-year-old male employee of his a ride home.  (*Id.*) at 260.  During the drive, Reyes-Alvares placed his hand under the minor's pants and masturbated him until the minor ejaculated.  (*Id.*)  The minor stated that he thought it was "right" for Reyes-Alvares to touch him in that manner because Reyes-Alvares had bought him a work cell phone earlier that day.  (*Id.*)  Two or three days later, Reyes-Alvares drove the minor to Reyes-Alvares's home.  (*Id.*)  Both drank alcohol during the drive.  (*Id.*)  Once they arrived at the home, Reyes-Alvares turned on a pornographic movie, began masturbating the minor, and then performed oral sex on the minor.  (*Id.*)  The minor then performed anal sex on Reyes-Alvares for about

---

[1] All facts marked with an (*) were stipulated to by the parties.  (Transcript) at 2-3; (Doc. 28) at 1-3.

[2] California Penal Code § 288(c)(1) "contains the following five elements: (1) willfully and lewdly; (2) committing any lewd or lascivious act; (3) on a child ages 14 or 15; (4) with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the defendant or the child; and (5) the defendant must be at least ten years older than the child."  *United States v. Castro*, 607 F.3d 566, 568 (9th Cir. 2010).

ten minutes, after which Reyes-Alvares drove the minor home.  (*Id.*)  The minor stated that both of the sexual encounters were consensual.  (*Id.*)

5.  On August 7, 2012, the Department of Homeland Security served Reyes-Alvares with a Notice to Appear.*  The Notice to Appear charged that Defendant was removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) because he had been convicted of a crime of child abuse and that Reyes-Alvares was also removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony.*

6.  During the pendency of his removal hearing, Reyes-Alvares appeared before the IJ on numerous occasions and the IJ repeatedly told Reyes-Alvares that he was ineligible for relief from deportation.*  During the hearings at which Reyes-Alvares was represented by an attorney, his attorney also found no forms of relief for which Reyes-Alvares might be eligible.

   a.  At a hearing on October 18, 2012, Reyes-Alvares's attorney at the time, Richard La Paglia, stated to the IJ, "Your Honor, I do not believe that [Reyes-Alvares] is eligible for any forms of relief at this time."  (ROA) at 103.  The IJ had before him the applicable police report and plea transcripts for Reyes-Alvares's crime.  (*Id.*) at 102.[3]

   b.  On November 16, 2012, La Paglia reiterated at a hearing, "We know of no forms of relief, Your Honor."  (ROA) at 113.

_____

[3] The IJ may have also had before him several letters from relatives and friends attesting to Reyes-Alvares's good character and requesting that Reyes-Alvares not be deported.  (Doc. 18) Ex. 8.  Many of the letters are dated October 2012.  The Court will assume for purposes of this Motion that the IJ received the letters dated prior to making his removal decision on April 19, 2013.

    c.   On February 19, 2013, the IJ stated to Reyes-Alvares, "I don't see that you're eligible for any forms of relief to stay here in the United States. . . . Based on your conviction that precludes you from any forms of relief.  You have no fear of returning to your home country.  I don't see any forms of relief, sir."  (*Id.*) at 136.  The IJ reiterated on February 22, 2013, "I don't see you're eligible for any forms of relief . . . ."  (*Id.*) at 142.

    d.   The IJ informed one of Reyes-Alvares's new attorneys, Carolena Skidmore, on March 26, 2013, "There's no forms of relief."  (*Id.*) at 155.

    e.   On April 19, 2013, Skidmore confirmed that Reyes-Alvares was not seeking any forms of relief.  (*Id.*) at 164.

7.   Throughout the proceedings before the IJ, the IJ became aware of various positive and negative equities regarding Reyes-Alvares.  Positive equities included the following:

    a.   On February 19, 2013, Reyes-Alvares testified that "I have my home here. I have . . . a business here.  I've been here for seven years with my papers and I've never asked for any assistance from the Government . . . ."  (ROA) at 136;

    b.   Reyes-Alvares owned Sergio's Car Wash.  (ROA) at 258, 260;

    c.   Reyes-Alvares had a United States citizen wife.  (ROA) at 271;

    d.   Reyes-Alvares had lived in the United States for about twenty years.  (ROA) at 135; and

    e.   Relatives and friends wrote letters attesting to Reyes-Alvares's good character.  *See supra* note 2.

Negative equities included the facts in the police report to which Reyes-Alvares stipulated to as the factual basis for his plea.  (ROA) at 260-61.

4

8. On April 19, 2013, the IJ issued his decision finding that Reyes-Alvares was removable because his 2012 conviction was both a crime of child abuse pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) and an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).* The IJ applied *United States v. Castro*, 607 F.3d 566, 567-68 (9th Cir. 2010), and the modified categorical approach called for in *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008), to determine that although Cal. Pen. Code § 288(c)(1) was missing one element of the generic crime of sexual abuse of a minor, Reyes-Alvares's actions met the requirements of the generic crime of sexual abuse of a minor, an aggravated felony. (ROA) at 74-76; 8 U.S.C. § 1101(a)(43)(A); 18 U.S.C. § 2243; *Castro*, 607 F.3d at 570 (California statute missing "sexual act" element of sexual abuse of a minor, involving "intentional touching, not through the clothing, of a minor's genitalia").   The IJ noted that Reyes-Alvares "has requested no forms of relief."  (ROA) at 77.

9. Reyes-Alvares timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA").*  Reyes-Alvares, through counsel (Patricia Mejia), argued to the BIA that *Descamps v. United States*, 133 S. Ct. 2276 (2013), decided on June 20, 2013, held that where a statute is missing an element of the generic crime, a person convicted under the statute cannot be convicted of the generic crime.  (ROA 40).  Therefore, Reyes-Alvares argued he was not convicted of the aggravated felony crime of sexual abuse of a minor. (*Id.*)

10. On September 16, 2013, the BIA issued its decision dismissing Reyes-Alvares's appeal.* In its decision, the BIA affirmed the IJ's determination that Reyes-Alvares's conviction qualified as a generic crime of child abuse pursuant to 8 U.S.C. § 1227(a)(2)(E)(i).*

Because the child abuse finding was dispositive, the BIA did not consider the IJ's determination that Reyes-Alvares's conviction was also an aggravated felony.*

11. On October 4, 2013, Reyes-Alvares petitioned the Ninth Circuit for review of the BIA's decision that his conviction qualified as a generic crime of child abuse.*  Reyes-Alvares additionally requested that the Ninth Circuit remand his case to the BIA for consideration of the IJ's aggravated felony determination.*

12. The IJ held a *Casas* bond hearing on August 12, 2014, at which the IJ denied Reyes-Alvares's request for bond.  (Gov't. Ex. 1) at 20; *see Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008).  At the bond hearing, Reyes-Alvares testified that, in addition to evidence previously before the IJ, he owned a home and had two United States citizen children, aged seventeen and thirteen, parents living in the United States with their green cards, six siblings in the United States with Lawful Permanent Resident status, and one brother with United States citizenship.  (Gov't Ex. 1) at 13-16.  Reyes-Alvares evaded a question about why he molested a fifteen-year-old boy and instead stated that the boy's mother wanted money from him and made the criminal accusation.  (Gov't Ex. 1) at 18-19.

13. On March 18, 2015, the Ninth Circuit affirmed the BIA's decision that Reyes-Alvares's prior conviction was a generic crime of child abuse and declined to reach any additional issues.*

14. On April 7, 2015, Reyes-Alvares was deported to Mexico.*

15. On August 16, 2015, Reyes-Alvares was arrested in Doña Ana County, District of New Mexico and was charged with one count of re-entry after deportation, in violation of 8 U.S.C. §§ 1326(a) and (b).*

**CONCLUSIONS OF LAW**

1. Illegal reentry under 8 U.S.C. § 1326(a) requires the following:

    (1) that the defendant "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding," and

    (2) that the defendant thereafter "enters, attempts to enter, or is at any time found in the United States."

2. Defendants whose removal is subsequent to conviction for an aggravated felony are subject to criminal penalties including a fine and/or imprisonment not to exceed twenty years.  8 U.S.C. § 1326(b)(2).

3. A defendant in an illegal reentry case may collaterally attack the legality of a prior deportation order, but he must show the following:

    "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

    (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

    (3) the entry of the order was fundamentally unfair."

8 U.S.C. § 1326(d); *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010).

4. As the Court will find that Reyes-Alvares failed to show fundamental unfairness in his removal proceedings, the Court does not discuss exhaustion of administrative remedies or deprivation of the opportunity for judicial review and instead proceeds directly to a discussion on fundamental unfairness.

5. Fundamental unfairness occurs only where a proceeding causes prejudice to the defendant. *Molina v. Holder*, 763 F.3d 1259, 1263 (10th Cir. 2014) (citing *United States v. Aguirre-Tello*, 353 F.3d 1199, 1207-09 (10th Cir. 2004)). "To establish prejudice, an alien must show a 'reasonable likelihood' that the outcome would have been different . . . ." *Id.*; *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) ("An underlying removal order is 'fundamentally unfair' if '(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'").

6. The Court applies the law that existed at the time and place of Reyes-Alvares's removal proceedings in conducting a review of 8 U.S.C. § 1326(d), though later decisions, such as those involving "statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant." *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005); *see United States v. Aguilera-Rios*, 769 F.3d 626, 632 (9th Cir. 2014).

**I. Whether Reyes-Alvares Committed an Aggravated Felony**

7. To determine whether a defendant is removable based on a conviction, a court generally applies a "categorical approach" to the statute of conviction. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). This approach involves

> compar[ing] the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime—*i.e.*, the offense as commonly understood. The prior conviction qualifies as an [Armed Career Criminal Act] predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.

*Id*.[4]  "[C]ourts may 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'"  *Id.* at 2283 (emphasis in original) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

8.  Some statutes are not amenable to the categorical approach, and a court must then use a "modified categorical approach."  *Id.* at 2281.  This approach applies when the state statute of conviction is a "divisible statute."  *Id.*  A divisible statute is one that "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile."  *Id.*  A divisible statute "effectively creates several different crimes."  *Id.* at 2285 (quotation omitted).  "If at least one, but not all of those crimes matches the generic version," a court applies the modified categorical approach to determine the offense of conviction.  *Id.*  When applying the modified categorical approach, a sentencing court can consult a limited set of documents, such as charging documents, indictments, jury instructions, the terms of a plea agreement, or a plea colloquy.  *Id.* at 2281; *Shepard v. United States*, 544 U.S. 13, 26 (2005).  That is, looking at such documents "renders opaque which element played a part in the defendant's conviction."  *Descamps*, 133 S. Ct. at 2283.  The modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime."  *Id.* at 2285.

---

[4] "The *Taylor-Descamps* line of cases developing and refining the categorical and modified categorical approach applies with equal force to both sentencing and immigration proceedings." *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 n. 12 (9th Cir. 2014) (citing *Aguilar-Turcios v. Holder*, 740 F.3d 1294 (9th Cir. 2014); *see Rendon v. Holder*, 764 F.3d 1077, 1083 n.5 (9th Cir. 2014)).

9. The Court held in *Descamps* that with an "'indivisible' statute—i.e., one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense" a court may not use the modified categorical approach to explore whether the facts show that the defendant committed the generic offense. *Id.* at 2281, 2293. "Whether the statute of conviction has an overbroad or missing element, the problem is the same: Because of the mismatch in elements, a person convicted under that statute is never convicted of the generic crime." *Id.* at 2292.

10. Circuit courts have applied *Descamps* retroactively to find that the district court erred in applying the modified categorical approach to statutes that are broader than or have a missing element when compared with the generic crime at issue. *See United States v. Gomez*, 757 F.3d 885, 889 (9th Cir. 2014) (vacating sentence imposed by district court pre-*Descamps* including sixteen-level enhancement based on modified categorical approach on statute missing element of generic offense); *United States v. Gonzalez-Monterroso*, 745 F.3d 1237, 1242-43 (9th Cir. 2014) (same, for statute broader than generic offense); *Omargharib v. Holder*, 775 F.3d 192, 196 n.6 (4th Cir. 2014) (applying *Descamps* retroactively in an illegal reentry case, stating "[b]ecause *Descamps* only clarified *Taylor*'s analysis, we hold it also applies here").

11. In *Castro*, the Ninth Circuit held that Cal. Pen. Code § 288(c)(1) "is broader than the generic offense of sexual abuse of a minor . . . ." 607 F.3d at 567-68.

12. The United States does not contest Reyes-Alvares's contention that he was not convicted of an aggravated felony. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (noting that party's failure to adequately develop arguments before district court led to forfeiture or waiver).

13. This Court applies *Descamps* retroactively and *Castro* to conclude that the law at the time and place of Reyes-Alvares's removal proceedings did not allow the use of the modified categorical approach to supply a missing element leading to the determination that Reyes-Alvares's conviction under Cal. Pen. Code § 288(c)(1) constituted an aggravated felony. Because Cal. Pen. Code § 288(c)(1) is also not an aggravated felony pursuant to the categorical approach alone, the Court concludes that Reyes-Alvares's conviction under Cal. Pen. Code § 288(c)(1) was not an aggravated felony.

14. Although Reyes-Alvares was not convicted of an aggravated felony with regard to his violation of Cal. Pen. Code § 288(c)(1), the IJ's finding that Reyes-Alvares committed a crime of child abuse still made him removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i). Therefore, in assessing the propriety of Reyes-Alvares's removal, the Court looks to whether there was a reasonable likelihood that he would have received discretionary forms of relief but for defects in his removal proceedings. *Molina*, 763 F.3d at 1263.

## II. Cancellation of Removal

15. At the January 21, 2016, hearing, defense witness Olsi Vrapi, an immigration lawyer, testified that Reyes-Alvares was not eligible for cancellation of removal pursuant to 8 U.S.C. § 1229b(a) because he did not meet the requirement of having resided in the United States for seven years after having been admitted in any status before committing the offense violating Cal. Pen. Code § 288(c)(1). (Transcript) at 6-8; *see* 8 U.S.C. § 1229b(d)(1) (stating stop-time rule that continuous period of residence terminates upon commission of offense under 8 U.S.C. § 1227(a)(2)). Reyes-Alvares's counsel also conceded at the hearing that he was not eligible for cancellation of removal. (Transcript) at 21. Therefore, the Court concludes that Reyes-Alvares did not have a reasonable

likelihood of receiving a cancellation of removal, and he was not prejudiced by any

defects in the removal proceedings as to this form of relief.

### III. Voluntary Departure

16. Reyes-Alvares argues that a removable defendant who is not deportable due to an

aggravated felony conviction or for national security reasons may be eligible for a

"voluntary departure" in lieu of deportation pursuant to the conditions in 8 U.S.C. §§

1229c(a) or (b).  Under 8 U.S.C. § 1229c(a)(1), the "Attorney General may permit an

alien voluntarily to depart the United States at the alien's own expense . . . in lieu of

being subject to [removal proceedings] . . . or prior to the completion of such

proceedings."  Alternatively, a defendant may receive a voluntary departure at the

conclusion of removal proceedings if he meets certain requirements: The defendant must

have "been physically present in the United States for a period of at least one year

immediately preceding the date the notice to appear was served;" have "good moral

character for at least 5 years immediately preceding the alien's application for voluntary

departure"; not have committed an aggravated felony or national security violation; and

have "established by clear and convincing evidence that the alien has the means to depart

the United States and intends to do so."  8 U.S.C. § 1229c(b)(1)(A-D).

17. Courts also examine a defendant's negative and positive equities in determining whether

to grant a voluntary departure.  *United States v. Valdez-Novoa*, 780 F.3d 906, 917 (9th

Cir. 2014).  "The negative equities include the nature and underlying circumstances of

the deportation ground at issue; additional violations of the immigration laws; the

existence, seriousness, and recency of any criminal record; and other evidence of bad

character or the undesirability of the applicant as a permanent resident."  *Id.* (quotation

omitted).  "The positive equities are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs."  *Id.* (quotation omitted).

18. The Court notes that both defense counsel and Vrapi asserted at the January 2016 hearing that the IJ may have missed hearing positive equities that would have weighed in Reyes-Alvares's favor against his negative equities in a consideration of discretionary forms of relief.  (Transcript) at 14, 17-19, 22.  Defense counsel suggested that mitigating evidence might have included why Reyes-Alvares committed the offense, what happened in his past, whether he had a history of abuse himself, what his childhood was like, what his family was like, etc.  (*Id.*) at 23.  However, Reyes-Alvares failed to provide the Court— either in the briefing or at the hearing—with specific examples of mitigating evidence. The Court will not infer the existence of other positive equities where Reyes-Alvares has not provided them.  The only additional positive equities beyond those heard by the IJ prior to the removal decision that the Court recognizes are those introduced at the *Casas* bond hearing.

19. Vrapi's testimony regarding whether Reyes-Alvares had a reasonable likelihood of receiving a voluntary departure but for defects in his removal proceedings is helpful, but not persuasive.  For instance, Vrapi testified that IJs "hand[][voluntary departures] out like candy."  (Transcript) at 4.  However, Vrapi could only identify two cases he had dealt with that involved sexual conduct with a minor by an older defendant.  (*Id.*) at 5. One of these defendants received an adjustment of status.  (*Id.*) at 5-6.  The other case remained open as of the time of Vrapi's testimony.  (*Id.*) at 20.

20. In addition, the cases cited in Reyes-Alvares's reply and at the hearing are distinguishable from the present case.  *In re: Teodulo Jimenez Garcia A.K.A. Teodoro Jimenez*, cited

both in the reply and at the hearing, involved significant positive equities not existing in the present case.  A097 514 827 – NEW, 2011 WL 4446823, at *1 (BIA Aug. 26, 2011) (unpublished).  For example, Jimenez Garcia had been convicted of the third degree crime of hindering prosecution for assisting in covering up a brutal murder.  *Id.* at *2. Significant to this case, Jimenez Garcia reported the murder and testified against one of the assailants.  *Id.*  More significantly, the prosecutor wrote a letter stating that Jimenez Garcia's assistance was critical to the successful prosecution.  *Id.*  Jimenez Garcia also had some similar positive equities as Reyes-Alvares, including being married to a United States citizen and a father to at least one citizen child and having lived in the United States for over twenty-nine years.  Yet, whereas Jimenez Garcia cooperated and assisted in the prosecution of a case, Reyes-Alvares failed to take responsibility for his actions, highlighted during his *Casas* bond hearing.  (Gov't Ex. 1) at 18-19.

21. *In re: Luis Alonzo Gonzales-Figeroa*, the defendant also had strong positive equities that outweighed the negative equities which are not present in the instant case.  A29 013 696 – BALT, 2006 WL 729784 (BIA Feb. 10, 2006) (unpublished).  As of 2004, when the IJ granted a voluntary departure, Gonzales-Figeroa had four convictions for assault, occurring in 1997, 1999, and 2002, and a conviction for resisting arrest in 2000.  *Id.* at *1.  However, Gonzales-Figeroa testified that the convictions were a result of drinking, that he had since joined Alcoholics Anonymous, and that he no longer drank alcohol.  *Id.* Also, Gonzales-Figeroa's mother was a Lawful Permanent Resident whom he helped with rent and medical expenses, and he had a sister and two nieces who were United States citizens.  *Id.*  In *United States v. Valdez-Novoa*, the Ninth Circuit discussed *Gonzales-Figeroa* in affirming a denial of voluntary departure.  780 F.3d 906, 918 (9th

14

Cir. 2014).  The court pointed out that, as opposed to Valdez-Novoa, Gonzales-Figeroa showed that he was reforming his behavior.  *Id.*  The fact Valdez-Novoa had parents and eight siblings with legal status, had arrived in the United States as a child, had earned a high school diploma and welding certificate, and worked various jobs did not overcome his serious and lengthy criminal history.  *Id.* at 917-18.  By failing to recognize that he did anything wrong, Reyes-Alvares has not shown reformation of his behavior.  Nor has he presented other significant positive equities that might outweigh the negative equity of violating Cal. Pen. Code § 288(c)(1).

22. *In re: Bacilio Hernandez-Garcia* involved the BIA's reversal of the denial of a pre-conclusion voluntary departure.  A098 237 003 – BOS, 2012 WL 1705671, at *1 (BIA Apr. 11, 2012) (unpublished).  In that case, the defendant was married to a United States citizen, had a four-year-old citizen child, and was willing to depart from the United States at his own expense.  *Id.* at *1.  Hernandez-Garcia had attempted to procure a United States passport by impersonating a United States citizen.  *Id.*  While not insubstantial, Hernandez-Garcia's crime was not as severe as that committed by Reyes-Alvares, and the two defendants had comparable positive equities.

23. Similarly, *In re: Ljupco Matovski Violeta Matovska*, the BIA reversed the denial of a voluntary departure where the defendants had two United States citizen children, owned property, and had lived in the United States for eight years.  A78 652 588 – DETR, 2005 WL 3802240, at *3 (BIA Nov. 23, 2005) (unpublished), *rev'd in part on other grounds, Matovski v. Gonzales*, 492 F.3d 722, 729 (6th Cir. 2007).  In that case, the defendants had extended their stay through misrepresenting their plans to stay in the United States and continuing to seek B-2 visitor-for-pleasure visas.  *Matovski*, 492 F.3d at 728-29;

*Matovska*, 2005 WL 3802240, at *3.  Again, this case involves a crime far less severe

than that committed by Reyes-Alvares.

24. The Court concludes that Reyes-Alvares has failed to meet his burden that he had a

reasonable likelihood of receiving a voluntary departure but for defects in his removal

proceedings.  The distinguishability of the cases cited and Vrapi's inability to testify to

similar cases where a defendant convicted of a sex crime of this nature was granted a

voluntary departure fail to support a conclusion that Reyes-Alvares suffered prejudice.

## IV. Waiver of Inadmissibility

25. Reyes-Alvares also argues in his brief that he was reasonably likely to have received a

waiver of inadmissibility—after which he would be eligible for an adjustment of status—

but for defects in his removal proceedings.  (Doc. 18) at 31-37.  At the January 2016

hearing, however, Vrapi testified that Reyes-Alvares might not have needed a waiver at

all for an adjustment of status.  (Transcript) at 12.  Whether Reyes-Alvares needed to

receive a waiver of inadmissibility depends on whether he committed a crime of moral

turpitude.  An alien who is convicted of a crime of moral turpitude is inadmissible to the

United States unless he receives a waiver.  8 U.S.C. § 1182(a)(2)(A)(i)(I).  An alien who

has been convicted of a crime of moral turpitude may receive a waiver of inadmissibility

if "it is established to the satisfaction of the Attorney General that the alien's denial of

admission would result in extreme hardship to the United States citizen or lawfully

resident spouse, parent, son, or daughter of such alien."  8 U.S.C. § 1182(h)(1)(B).

26. "Typically, crimes of moral turpitude involve fraud."  *Gonzalez-Alvarado v. I.N.S.*, 39

F.3d 245, 246 (9th Cir. 1994) (citations omitted).  "However, we have included in this

category acts of baseness or depravity contrary to accepted moral standards, such as

spousal abuse, child abuse, and statutory rape which involve moral turpitude by their very

nature." *Id.* (quotation and citations omitted); *see also Efagene v. Holder*, 642 F.3d 918,

922 (10th Cir. 2011) ("As noted by the BIA, the crimes of statutory rape, child abuse, and

spousal abuse are considered crimes involving moral turpitude.").  The Ninth Circuit has

held that "the following sex-related crimes are categorically crimes of moral turpitude:

'lewd and lascivious conduct toward a child' . . . ." *Nunez v. Holder*, 594 F.3d 1124,

1132 (9th Cir. 2010) (quoting *Schoeps v. Carmichael*, 177 F.2d 391, 394 (9th Cir. 1949)).

27. Reyes-Alvares was convicted of a crime of child abuse.  (ROA 76).  Further, Cal. Pen.

Code § 288(c)(1) explicitly refers to "lewd or lascivious act[s]" on a "child of 14 or 15

years."  The Court, therefore, concludes that Reyes-Alvares committed a crime of moral

turpitude.  Accordingly, in order for Reyes-Alvares to have been eligible for an

adjustment of status, he must show that he had a reasonable likelihood of receiving a

waiver of inadmissibility.

28. The Ninth Circuit has held that "generalities set forth by [a defendant] do not meet the

burden required for showing extreme hardship."  *Shooshtary v. I.N.S.*, 39 F.3d 1049,

1051 (9th Cir. 1994).  Rather, "waiver should be granted only in those cases where great

actual or prospective injury to the qualifying party will occur.  There must be an extreme

impact on the citizen or lawful permanent resident family member."  *Id.*  (quotation

omitted).  In *Shooshtary*, the defendant "testified in nonspecific terms, alleging that his

wife cannot support the family should he be deported, that he would be unable to find

employment in [his home country] at his age and with his qualifications, and that his

children would be traumatized if separated from him."  *Id.*  The court and the BIA

pointed out that defendant "offered no evidence regarding his wife's income, no evidence

why his family could not join him [in his home country], no evidence why he believes

that he could not gain employment in [his home country], [and] no evidence of his wife's

inability to gain employment in [his home country]." *Id.* The court noted that "[t]he

common results of deportation or exclusion are insufficient to prove extreme hardship."

*Id.* (quoting *Hassan v. I.N.S.*, 927 F.2d 465, 468 (9th Cir. 1991)). Loss of financial

support for relatives in the United States is insufficient to establish extreme hardship.

*United States v. Becerril-Lopez*, 541 F.3d 881, 886 (9th Cir. 2008).

29. Reyes-Alvares stated in his brief that his deportation was an extreme hardship "as he was

the primary financial support for [his wife and children], and his children were both

under the age of 16 at the time of the removal proceedings." (Doc. 18) at 37. The Court

finds that Reyes-Alvares failed to provide evidence beyond generalities that reflect the

common results of deportation. Therefore, he has not met his burden of showing a

reasonable likelihood that he would have been granted a waiver of inadmissibility but for

defects in his removal proceedings.

30. Regardless of the IJ and Reyes-Alvares's attorneys' statements that Reyes-Alvares was

not eligible for forms of relief, the Court's conclusion that Reyes-Alvares failed to show

a reasonable likelihood of relief in the absence of procedural defects negates any need to

discuss the validity of these statements.

## V. Conclusion

31. Based on the foregoing conclusions, Reyes-Alvarez cannot challenge his underlying

removal order pursuant to 8 U.S.C. § 1326(d).

IT IS THEREFORE ORDERED

that Reyes-Alvares's Motion to Dismiss the Indictment (Doc. 18) is DENIED.

UNITED STATES DISTRICT JUDGE